**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SERGIO GONZALEZ-HUERTA;
a/k/a Sergio Covarrublias; a/k/a
Gonzalez-Covarrublias,

Defendant - Appellant.

No. 04-2045

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-03-1843-JP)**

---

Demetra Lambros, United States Department of Justice, Criminal Division, Washington, D.C. (David C. Iglesias, United States Attorney, Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico, with her on the briefs), for Plaintiff-Appellee.

Jenine M. Jensen Assistant Federal Public Defender, Denver, Colorado (Raymond P. Moore, Federal Public Defender, Denver, Colorado with her on the briefs), appearing for Defendant-Appellant.

Norman R. Mueller, Haddon, Morgan & Foreman, P.C., Denver, Colorado; Timothy M. Hurley, University of Denver Sturm College of Law, Denver, Colorado; Jeremy Karpatkin and Andrew Unthank, Federal Appellate Clinic at University of Denver Sturm College of Law, Denver, Colorado; filed an amicus curiae brief for the National Association of Criminal Defense Lawyers.

Before **TACHA**, Chief Circuit Judge, **SEYMOUR**, **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Defendant-Appellant Sergio Gonzalez-Huerta pleaded guilty to illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a)–(b)(2). The District Court sentenced Mr. Gonzalez-Huerta to 57 months' incarceration. In determining Mr. Gonzalez-Huerta's sentence, the court did not rely upon judge-found facts, but it did apply mandatorily the U.S. Sentencing Guidelines (2003) ("Guidelines"). Mr. Gonzalez argues for the first time on appeal that this mandatory application of the Guidelines constitutes reversible error under *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). Because Mr. Gonzalez-Huerta did not raise this argument in the District Court, this appeal is reviewed only for plain error. *See* Fed. R. Crim. P. 52(b). We take jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), hold that the fourth prong of plain-error review is not satisfied, and AFFIRM.

## I. BACKGROUND

In 1994, Mr. Gonzalez-Huerta was convicted of committing burglary in California. After serving a prison term, he was deported to Mexico in 2000. In May 2003, Mr. Gonzalez-Huerta was arrested in New Mexico for possession of a

controlled substance.  While Mr. Gonzalez-Huerta was being held in a New Mexico jail, United States Border Patrol Agents discovered that he had reentered the country illegally.

The Government indicted Mr. Gonzalez-Huerta for unlawfully reentering the United States after deportation following an aggravated felony.  *See* 8 U.S.C. § 1326(a)–(b)(2).  By statute, this offense is punishable by a maximum sentence of 20 years, with no mandatory minimum sentence.  8 U.S.C. § 1326(b)(2).  Mr. Gonzalez-Huerta pleaded guilty without entering into a plea agreement.

With the exception of its findings regarding Mr. Gonzalez-Huerta's prior convictions, the District Court calculated Mr. Gonzalez-Huerta's sentencing range under the Guidelines without making findings of fact beyond those admitted by Mr. Gonzalez-Huerta.  In so doing, the District Court concluded that Mr. Gonzalez-Huerta had an offense level 21 and a criminal history category IV.  The court then mandatorily applied the Guidelines, which set Mr. Gonzalez-Huerta's sentence range at 57–71 months' imprisonment, and imposed a 57-month sentence.  While Mr. Gonzalez-Huerta did not object to the mandatory application of the Guidelines at sentencing, he did timely appeal his sentence.

While this case was pending on appeal, the Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. —, 124 S. Ct. 2531, 2537 (2004), which held that in a state prosecution the Sixth Amendment requires that the

maximum permissible sentence in a given case must be determined solely by reference to "facts reflected in the jury verdict or admitted by the defendant." That is to say, the Court held that mandatory sentencing guidelines, which require the sentencing judge to make findings of fact, may not be used to increase a defendant's sentence in a state prosecution even though this enhanced sentence falls within the statutory sentencing range. In January of this year, the Court held that *Blakely* applies to federal sentences as well. *Booker*, 125 S. Ct. at 749–50.

On appeal, Mr. Gonzalez-Huerta argues for the first time that *Booker* is grounds for remanding his case for resentencing. We set this case for en banc review sua sponte to resolve this matter of great importance. *See* 28 U.S.C. § 46(c). We requested supplemental briefing from the parties on an expedited basis and received an amicus curiae brief from the National Association of Criminal Defense Lawyers. The question being fully argued, we turn to the single substantial issue in this appeal: On plain-error review, does the District Court's mandatory application of the Guidelines constitute reversible error when the District Court relied solely upon Mr. Gonzalez-Huerta's prior convictions and admitted facts in determining his maximum sentence?[1]

---

[1]Mr. Gonzalez-Huerta raises a second issue solely for the purpose of preserving it for a petition for certiorari. He argues that *Blakely* calls into question the Court's ruling in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that the fact of a prior conviction may be judicially

(continued...)

- 4 -

## II. DISCUSSION

### A.

In *Booker*, the Court "reaffirm[ed its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. As a result, the Court held that mandatory application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence. The Court constructed a unique remedy to this constitutional infirmity. It severed two provisions of the Sentencing Reform Act of 1984, codified at 18 U.S.C. § 3551 et seq. Namely, it excised 18 U.S.C. § 3553(b)(1), which made the

---

[1](...continued)
recognized. First, we note that this argument was not raised below, limiting our review to plain error. In any event, the holding in *Booker*, envisions *Almendarez-Torres* as good law. *Booker*, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). We believe that any reconsideration of *Almendarez-Torres* must be conducted by the Supreme Court. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents."); *cf. Shepard v. United States*, — U.S. —, 125 S.Ct. 1254, 1263–64 (2005) (Thomas, J., concurring) (noting that the Supreme Court has not reconsidered *Almendarez-Torres* since announcing the rule applied in *Blakely* and *Booker*).

imposition of a Guidelines sentence mandatory in the vast majority of cases, and those portions of 18 U.S.C. § 3742(e) that established standards of review on appeal. *Booker*, 125 S. Ct. at 764. Henceforth, courts are still required to consider the Guidelines in determining sentences, but they are not required to impose a sentence within the Guidelines range. *Id.*

As a result, there are two distinct types of error that a court sentencing prior to *Booker* could make. First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As *Booker* makes clear, the Sixth Amendment prohibits this practice. 125 S. Ct. at 756. As a matter of convenience, we will refer to such an error as a "constitutional *Booker* error." Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. *Id.* at 769. While this type of sentence does not violate the Sixth Amendment, *id.*, such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines, *id.* at 764. We will refer to this second type of error as a "non-constitutional *Booker* error."

B.

This case presents us with a non-constitutional *Booker* error.[2] The record establishes that, except for the fact of Mr. Gonzalez-Huerta's prior convictions, the District Court relied solely upon facts admitted by Mr. Gonzalez-Huerta in calculating his maximum sentence. It is also undisputed that Mr. Gonzalez-Huerta did not raise this non-constitutional *Booker* error below. Thus, we review Mr. Gonzalez-Huerta's claim for plain error. *See* Fed. R. Crim. P. 52(b); *Booker*, 125 S. Ct. at 769 (stating in dicta that not every appeal should be remanded for resentencing "because we expect reviewing courts to . . . determin[e] . . . whether the issue was raised below and whether it fails the 'plain error' test."); *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (holding that defendant's argument based upon *United States v. Gaudin*, 515 U.S. 506 (1995), which held the failure to instruct the jury on the issue of materiality is a Sixth Amendment violation, was raised for the first time on appeal and thus subject to plain-error review).

We turn, then, to our application of plain-error review. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and

---

[2]In a footnote, Mr. Gonzalez-Huerta briefly asserts that the mandatory use of the Guidelines violates the Due Process Clause of the Fifth Amendment, rather than the jury trial guarantee under the Sixth Amendment. In support of this argument, he cites *Hicks v. Oklahoma*, 447 U.S. 343 (1980), to demonstrate that the legislature can create statutory liberty interests in sentencing procedures. Mr. Gonzalez-Huerta fails to argue, however, that any provision in the Sentencing Reform Act creates such a statutory liberty interest. Because Mr. Gonzalez-Huerta fails to provide this essential predicate for a due process claim, we find this argument unpersuasive.

which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir.) (quotation omitted), *cert. denied*, 125 S. Ct. 510 (2004). Clearly, the first two prongs of the plain-error test are met here. First, the *Booker* Court excised 18 U.S.C. § 3553(b)(1), thereby rendering the Guidelines discretionary. *Booker*, 125 S. Ct. at 764. The District Court's mandatory application of the Guidelines, then, was erroneous. As to the second prong, an error is "plain" if it is clear or obvious at the time of the appeal, *Johnson*, 520 U.S. at 468, and *Booker* renders the error here both clear and obvious on appeal. Thus, the primary issue in this case is whether Mr. Gonzalez-Huerta can satisfy both the third and fourth prongs of plain-error review.

C.

Satisfying the third prong of plain-error review—that the error affects substantial rights—"usually means that the error must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002) (quotations omitted); *see also United States v. Olano*, 507 U.S. 725, 734 (1993). The appellant bears the burden to make this showing.[3] *United States v.*

---

[3]Because it fails to discuss this crucial issue of who bears the burden to establish that substantial rights were affected, we find *United States v. Ameline*, 400 F.3d 646, 654 (9th Cir. 2005), *vacated and reh'g en banc granted* (9th Cir. Mar. 11, 2005), unpersuasive.

*Vonn*, 535 U.S. 55, 62–63 (2002); *Olano*, 507 U.S. at 734–35. This is also the case when the error occurs during sentencing. *See Jones v. United States*, 527 U.S. 373, 394–95 (1999). As this Court held in *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003), a "defendant appealing her sentence who failed to timely object to the alleged error bears the burden of proving prejudice under plain error analysis." Indeed, even when the underlying error is constitutional—as is not the case here—appellant retains the burden to demonstrate that substantial rights are affected. *Cotton*, 535 U.S. at 632; *United States v. Chavez*, 229 F.3d 946, 951 (10th Cir. 2000). To meet this burden, the appellant must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. —, 124 S. Ct. 2333, 2339 (2004) (alterations and quotation omitted). Mr. Gonzalez-Huerta therefore bears the burden to convince this Court, based on the record on appeal, that the error affected his substantial rights. *See id.* at 2340; *Vonn*, 535 U.S. at 59; *United States v. Rodriguez*, 398 F.3d 1291, 1305–06 (11th Cir. 2005), *petition for cert. filed*, (U.S. Feb. 23, 2005) (No. 04-1148).[4]

---

[4]Because plain error must be assessed based upon the record on appeal, we find the approach to *Booker* plain error adopted in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), which provide for limited remands to determine whether the

(continued...)

Mr. Gonzalez-Huerta and Amicus National Association of Criminal Defense Lawyers counter that Mr. Gonzalez-Huerta does not bear the burden to show that his substantial rights were affected. They contend that this conclusion follows because the District Court's mandatory application of the Guidelines constitutes structural error. We disagree.

In *Olano*, the Court held that to satisfy the third prong of plain error, "in most cases . . . the error must have been prejudicial: It must have affected the outcome of the district court proceedings." 507 U.S. at 734. The Court, however, carved out an exception to this general rule. It stated that "there may be a special category of forfeited errors [i.e., structural errors] that can be corrected regardless of their effect on the outcome." *Id*. at 735. A "structural" error, as explained in *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991), is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Structural errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577–78 (1986) (internal citation omitted). The Court has found structural errors only in a very limited

---

[4](...continued)
district court would issue a lower sentence, inconsistent with plain error doctrine. *See Rodriguez*, 398 F.3d at 1304–06 (critiquing the *Crosby* approach).

class of cases.[5]  We have also noted that "the universe of [structural] errors is extremely small."  *United States v. Garcia*, 78 F.3d 1457, 1464 n.10 (10th Cir. 1996).  Indeed, the Supreme Court has held that "[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are [not structural errors.]"  *Neder v. United States*, 527 U.S. 1, 8 (1999).

Given these considerations, we conclude that non-constitutional *Booker* error does not constitute structural error.  First, as *Neder* implies, generally speaking structural errors must, at a minimum, be constitutional errors.  *See id.* Second, because Mr. Gonzalez-Huerta had counsel and an impartial judge there is a strong presumption against finding structural error.  *Id.*  Third, a defining feature of structural error is that the resulting unfairness or prejudice is "necessarily unquantifiable and indeterminate," *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993), such that "any inquiry into its effect on the outcome of the case would be purely speculative," *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). That is to say, if, as a categorical matter, a court is capable of finding that the

---

[5]*See Sullivan v. Louisiana*, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction to jury); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *Waller v. Georgia*, 467 U.S. 39 (1984) (right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (lack of an impartial trial judge).

error caused prejudice upon reviewing the record, then that class of errors is not structural. Such is the case with non-constitutional *Booker* error. If, for example, the district court indicates that but for the mandatory nature of the Guidelines it would have issued a lower sentence, the reviewing court could determine from the record that the error was prejudicial.[6] *See United States v. Shelton*, 400 F.3d 1325, 1328, 1332–33 (11th Cir. 2005) (holding that the defendant had satisfied the third prong where the district court stated that the Guidelines sentence was "very, very severe" and indicated by other statements that the mandatory Guidelines sentence was "unfortunate."). Hence, we hold that non-constitutional *Booker* error is not structural error. *Accord United States v. Antonakopoulos*, 399 F.3d 68, 80 n.11 (1st Cir. 2005).

Alternatively, Mr. Gonzalez-Huerta argues that he does not bear the burden under the third prong of plain error because the *Olano* Court noted that some unraised errors should be "presumed prejudicial if the defendant cannot make a specific showing of prejudice." 507 U.S. at 734. He urges that when a case is pending on appeal and an intervening decision overturns law that was well-settled while the case was in the district court, the appellee should bear the burden to establish that substantial rights were not affected. *See United States v. Barnett*,

---

[6]This is not to say this is the only way the third prong can be satisfied. *See United States v. Antonakopoulos*, 399 F.3d 68, 81 (1st Cir. 2005); *United States v. MacKinnon,* 401 F.3d 8, 11 (1st Cir. 2005).

398 F.3d 516, 526–29 (6th Cir. 2005); *United States v. Viola*, 35 F.3d 37, 42 (2d Cir. 1994), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 65–66 (1997); *United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir. 1994).[7] Following this same line of reasoning, the Sixth Circuit in *Barnett* held that a presumption of prejudice is appropriate for non-constitutional *Booker* error because "the inherent nature of the error [makes] it exceptionally difficult for the defendant to demonstrate that the outcome of the lower court would have been different had the error not occurred." 398 F.3d at 526–27. Mr. Gonzalez-Huerta argues that this Court should adopt the approach taken in *Barnett*.

We do not find *Barnett* persuasive for several reasons. First, in the twelve years since its decision in *Olano*, the Court has never again mentioned this category of presumed prejudice—let alone applied it to an analogous factual scenario. In *Johnson*, for example, the Court faced the question whether a defendant bore the burden to satisfy the third prong of plain error when he raised, for the first time on appeal, an argument based on the intervening Supreme Court

---

[7]Worthy of note, although the Second and District of Columbia Circuits have an intervening decision doctrine as precedent, neither court applied that precedent to *Booker* plain error cases. The Second Circuit has opted for the limited remand approach. *Crosby*, 397 F.3d at 120. The District of Columbia Circuit, on a motion for panel rehearing, held that the defendant could not satisfy the third prong and that an "intervening change in law [is] no excuse for failure to object." *United States v. Smith*, — F.3d —, 2005 WL 627077 at *1 (D.C. Cir. 2005) (citing *Johnson*, 520 U.S. at 464).

decision of *United States v. Gaudin*, 515 U.S. 506 (1995), which overturned law that was well-settled at the time of the district court proceedings. 520 U.S. at 469–70. The Court, however, failed to make any mention of presumed prejudice in reaching its decision. We similarly question the applicability of presumed prejudice to Mr. Gonzalez-Huerta's case.

Second, establishing that non-constitutional *Booker* error affects substantial rights is not an impossible task. The Eleventh Circuit's recent *Shelton* opinion illustrates one means of satisfying the third prong. If the sentencing judge expressed unhappiness on the record with the mandatory nature of the Guidelines as it relates to the sentence in that particular case, then the defendant can satisfy the third prong of plain error. *Shelton*, 400 F.3d 1325, 1328. Moreover, "[e]ven in cases where the judge was silent, there may be cases in which the appellate panel is convinced by the defendant based on the facts of the case that the sentence would, with reasonable probability, have been different such that" the third prong may be satisfied. *Antonakopoulos*, 399 F.3d at 81 (outlining scenarios where the third prong of plain error would likely be met); *see also United States v. MacKinnon,* 401 F.3d 8, 11 (1st Cir. 2005) (judge's comments plus numerous grounds for departure that could not be considered under mandatory guidelines required remand). We are confident, then, that leaving the burden with the appellant does not render satisfaction of the third prong impossible.

- 14 -

Third, an appellant, even prior to *Booker*, had every reason to present mitigating sentencing factors to the district court. *See Barnett*, 398 F.3d at 537–38 (Boggs, C.J., dissenting). The Guidelines present a sentencing court with a range in which to sentence. Thus, both the prosecutor and defense counsel, even under the mandatory Guidelines scheme, had the opportunity to present mitigating circumstances to the district court that might place a criminal defendant at the high or low end of the range. As such, "[a]ny arguments that might be raised post-*Booker* about culpability, future dangerousness, offsetting good works, family obligations, or any other mitigating circumstance were also fair game pre-*Booker*." *Id*. at 538. As Chief Judge Boggs aptly concluded, "the Guidelines never placed any limits on the ability of the district court to consider these factors, so there is no reason to remand so the district court may consider additional circumstances." *Id*. Hence, any failure to include such evidence in the record prior to *Booker* fairly rests with the appellant.

Finally, placing the burden on the appellant is one of the essential characteristics distinguishing plain error from harmless error. *See Vonn*, 535 U.S. at 62–63; *Olano*, 507 U.S. at 734–35. Shifting the burden to the appellee would seriously blur this distinction and would be inconsistent with our precedent. *Cf. United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005) (on harmless-error review, remanding a non-constitutional *Booker* error case in the

- 15 -

face of a silent record). Therefore, we do not adopt the *Barnett* burden-shifting approach and hold that Mr. Gonzalez-Huerta bears the burden to establish by a reasonable probability based upon the record on appeal that his substantial rights were affected by the District Court's mandatory application of the Guidelines. *Accord United States v. Mares*, — F.3d —, 2005 WL 503715 at \*8–\*9 (5th Cir. 2005); *Antonakopoulos*, 399 F.3d at 79–80; *Rodriguez*, 398 F.3d at 1299–1301.

D.

We need not determine whether Mr. Gonzalez-Huerta can satisfy this burden because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief. *See Cotton*, 535 U.S. at 632–33 ("[W]e need not resolve . . . [the third prong of plain-error review], because even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings."); *Johnson*, 520 U.S. at 469–70 (same); *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1251 (10th Cir. 2004) (applying *Cotton* and *Johnson*). Mr. Gonzalez-Huerta does not satisfy this prong.

As a preliminary matter, we note that in the wake of *Booker* several courts of appeals have collapsed the third and fourth prong analyses. That is to say, if these courts find the third prong satisfied, they conclude that the fourth prong is met as a matter of course. *See, e.g., United States v. Crosby*, 397 F.3d 103, 118

(2d Cir. 2005) ("[A] district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis."). We cannot subscribe to this approach. The Court in *Olano* clearly held that "a plain error affecting substantial rights does not, without more, satisfy the . . . standard, for otherwise the discretion afforded by Rule 52(b) would be illusory." 507 U.S. at 737. Therefore, we are bound to treat the third and fourth prongs as independent inquiries.

Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson*, 520 U.S. at 467. As such, we will not notice a non-constitutional error, such as the one in the case before us, unless it is both "particularly egregious" and our failure to notice the error would result in a "miscarriage of justice." *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997); *see also Olano*, 507 U.S. at 736 (holding that the "discretion conferred by Rule 52(b) should be employed [only] in those circumstances in which a miscarriage of justice would otherwise result.") (internal quotations omitted). This is a demanding standard, *see Dominguez Benitez*, 124 S. Ct. at 2335, and of course, depends on the facts of the particular case.

Mr. Gonzalez-Huerta bears the burden of meeting this demanding standard. *Vonn*, 535 U.S. at 63 ("[A] defendant has the further burden to persuade the court that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'"). While some find that *Olano* provides a foundation for the "presumed prejudice" approach to the third prong of plain-error review as adopted by the Sixth Circuit in *Barnett*, the Supreme Court has never shifted the burden to the appellee to establish that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. To the contrary, the Supreme Court has consistently applied the fourth prong of plain-error review rigorously—even when the error is the result of an intervening Supreme Court decision that alters well-settled law. For example, the *Johnson* Court considered the application of the fourth prong of plain-error review in the wake of its *Gaudin* decision, which overturned established law regarding the need to present materiality to the jury. 520 U.S. at 469–70. Despite the major change in criminal law made by *Gaudin*, the Court declined to carve out an exception to the burden framework as to the fourth prong of plain error. *Id*. Rather, it concluded that the record on appeal simply provided "no basis" for the notion that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, and that a miscarriage of justice would not result from its decision to affirm. *Id*.

This Court has similarly applied the fourth prong of plain-error review in cases where an intervening Supreme Court decision alters well-settled law. We considered this issue immediately after the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which, like *Booker*, drastically changed federal sentencing procedure. Nonetheless, we applied the traditional rigorous approach to the fourth prong of plain-error review to appeals pending when the Court issued that decision. *See United States v. Keeling*, 235 F.3d 533, 538–40 (10th Cir. 2000). We use the same approach today.

Mr. Gonzalez-Huerta fails to meet his burden to satisfy the fourth prong of plain-error review. In his brief on appeal, he offers nothing more than the conclusory statement that: "[T]o leave standing this sentence imposed under the mandatory guideline regime, we have no doubt, is to place in jeopardy the fairness, integrity, or public reputation of judicial proceedings." Aplt. Supp. Brief at 12 (quoting *United States v. Hughes*, 396 F.3d 374, 381 (4th Cir. 2005)). Providing this quotation is a far cry from establishing that a miscarriage of justice would occur if we do not remand.[8] To the contrary, based upon our

---

[8]The Fourth Circuit in *Hughes*, 396 F.3d at 380–81, took a different approach to the fourth prong. It previously held the fourth prong satisfied because "*Booker* wrought a major change in how federal sentencing is to be conducted." *Id*. at 380. Because we do not find that this change in well-established law mandates a lesser fourth-prong burden, we do not find this reasoning persuasive. Moreover, we note that the Fourth Circuit panel granted

(continued...)

review of the record, we are convinced that the District Court's mandatory application of the Guidelines was not "particularly egregious" or a "miscarriage of justice."

Several considerations support our conclusion. The error of which Mr. Gonzalez-Huerta complains is not the substantive error first recognized in *Blakely* and which *Booker* sought to eliminate—namely, that the Sixth Amendment is violated when a judge, rather than a jury, finds facts that mandatorily increase a defendant's sentence. Rather, the error in Mr. Gonzalez-Huerta's case—that the District Court applied the Guidelines mandatorily—is only error insofar as it runs afoul of the Court's *remedy* for the unconstitutional implications of the Guidelines. This disconnect between the constitutional violation and the remedy makes *Booker* unique. While there is no doubt that the remedy cures the constitutional violations going forward, usually the cure for a constitutional violation directly relates to the constitutional violation. The fortuity of the Court's choice to excise 18 U.S.C. § 3553(b)(1), instead of a remedy more directly related to the underlying constitutional problem, is key to our

---

[8](...continued)
rehearing and issued a new opinion in *Hughes*. *See United States v. Hughes*, — F.3d —, 2005 WL 628224 (4th Cir. 2005). The Fourth Circuit now relies upon a different fourth-prong rationale. The court now holds the fourth prong met because "Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence authorized by the jury verdict." *Id*. at *13. We do not face similar facts here.

determination that the District Court's erroneous—although not constitutionally erroneous—mandatory application of the Guidelines is not particularly egregious or a miscarriage of justice.

Moreover, the purpose of the Guidelines was to promote uniformity in sentencing so as to prevent vastly divergent sentences for offenders with similar criminal histories and offenses. *See Koon v. United States*, 518 U.S. 81, 92 (1996). The federal courts have been striving towards this worthy goal since 1987. Indeed, this goal remains the same post-*Booker*. *Booker*, 125 S. Ct. at 761 ("This point is critically important. Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."). In doing so, the courts and the United States Sentencing Commission have established national norms for sentencing that are embodied in the Guidelines. *See Mistretta v. United States*, 488 U.S. 361, 369-70 (1989). Even though district courts now have discretion in sentencing, they must consider the Guidelines (i.e., the national norm) when sentencing. *Booker*, 125 S. Ct. at 764 ("The Act nonetheless requires judges to consider the Guidelines 'sentencing range established for ... the applicable category of offense committed by the applicable category of defendant.'"). Here, Mr. Gonzalez-Huerta received a sentence that is within this national norm and the record is devoid of any

mitigating evidence.[9] Given that his sentence is consistent with this national norm and there is no record evidence to support a lower sentence, we cannot conclude that Mr. Gonzalez-Huerta's sentence is particularly egregious or a miscarriage of justice.

Further, for the last eighteen years, every federal court has given the Guidelines tacit, and in most cases explicit, approval, applying them to tens of thousands of federal sentences. In this regard, we agree with the First Circuit that "one cannot possibly say that all sentences imposed before *Booker* threatened the fairness, integrity, or public reputation of judicial proceedings, or undermined our confidence in the outcome of the sentence, simply because the Guidelines were mandatory." *Antonakopoulos*, 399 F.3d at 80; *cf. United States v. Wilson*, 244 F.3d 1208, 1220 n.7 (10th Cir. 2001) (applying the fourth prong of the plain-error test and declining to correct an error, in part, because the procedures involved

---

[9]Indeed, the District Court specifically asked Mr. Gonzalez-Huerta, "Are all of the statements of fact in your [presentence] report correct?" Mr. Gonzalez-Huerta replied, "Yes." The court then inquired, "[I]s there any need for an evidentiary hearing on disputed facts?" Defense counsel stated there was not. The court again asked, "Are there any written materials other than the presentence report that I should take into account?" Mr. Gonzalez-Huerta's lawyer replied, "Nothing on behalf of the defendant, Judge." The court then stated its intention to sentence Mr. Gonzalez-Huerta to 57 to 71 months' incarceration and asked, "Are you in agreement with that?" Defense counsel replied, "Yes, your honor." Yet again, the court asked defense counsel, "would you like to make a statement on behalf of Mr. Gonzalez at this time?" Defense counsel thanked the Judge for sentencing at the low end of the range and stated that he had informed Mr. Gonzalez-Huerta that he was eligible for good-time credits.

"were universally considered fair at the time of trial").

Indeed, courts have held that sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended. For example, the courts generally have held the fourth prong met when the sentence exceeds the statutory maximum,[10] *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002), when the sentencing court employs an improper burden of proof, *United States v. Jordan*, 256 F.3d 922, 933 (9th Cir. 2001), and when the sentencing court denies the defendant his right to allocution, *United States v. Adams*, 252 F.3d 276, 288–89 (3rd Cir. 2001).[11] Here, we are not faced

---

[10]At times we have referred to the imposition of a sentence beyond the statutory maximum as an "illegal sentence." The use of this terminology, however, has led to some confusion. Thus, we recently clarified that the term "illegal sentence" is reserved for those instances where the term of incarceration exceeds the statutory maximum, while a wrongly imposed sentence that is under the statutory maximum is properly termed an "erroneous sentence." *United States v. Brown*, 316 F.3d 1151, 1160 n.4 (10th Cir. 2003). Because Mr. Gonzalez-Huerta's sentence is under the statutory maximum, he did not receive an "illegal sentence" that would trigger per se, reversible, plain error. *Cf. United States v. Smith*, 156 F.3d 1046, 1057 (10th Cir. 1998).

[11]Although "[w]e previously have held . . . that application of the wrong Guidelines range constitutes plain error," *United States v. Occhipinti*, 998 F.2d 791, 801–02 (10th Cir. 1993), we later clarified that application of the wrong guideline only "constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b), thereby satisfying the third prong of the plain error inquiry," leaving the appellant with the burden to establish the remaining prongs of plain error review, *United States v. Whitney*, 229 F.3d 1296, 1308–09 (10th Cir. 2000). Thus, even if we held that the District Court applied the wrong guideline range in this case, such a finding would not necessarily satisfy the fourth prong of plain-error review.

with a similar scenario where basic notions of justice are jeopardized. Hence, we cannot hold, based upon the culmination of these factors, that the mandatory application of the Guidelines in this case—while error—is a particularly egregious one that would result in a miscarriage of justice or otherwise call the judiciary into disrepute unless we remanded.

### III. CONCLUSION

Because Mr. Gonzalez-Huerta's challenge to this non-constitutional *Booker* error was raised for the first time on appeal and he cannot satisfy the fourth prong of plain-error review, we AFFIRM.

*United States v. Gonzalez-Huerta*, No. 04-2045

**TACHA**, Chief Circuit Judge, concurring.

I fully concur in the majority opinion. I write separately because I would also find that Mr. Gonzalez-Huerta cannot satisfy the third prong of plain-error review. I am authorized to say that Judge Kelly, Judge Murphy, Judge O'Brien, Judge McConnell, and Judge Tymkovich join this concurring opinion.

Having concluded that the burden squarely rests on Mr. Gonzalez-Huerta, I would turn next to whether he satisfies the third-prong. Unlike in *United States v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005), or *United States v. Shelton*, 400 F.3d 1325, 1328, 1332–33 (11th Cir. 2005), Mr. Gonzalez-Huerta does not point to anything in the record that shows with a reasonable probability that his substantial rights were affected by the mandatory application of the Guidelines. The most he can offer is speculation that with its newfound discretion the District Court might impose a lower sentence. In my view, this is an insufficient showing.

In the District Court, Mr. Gonzalez-Huerta offered no mitigating evidence that suggests a lower sentence would be justified, nor did he contest facts in the presentence report. Indeed, the court specifically asked Mr. Gonzalez-Huerta, "Are all of the statements of fact in your [presentence] report correct?" Mr. Gonzalez-Huerta replied, "Yes." The court then inquired, "[I]s there any need for an evidentiary hearing on disputed facts?" Defense counsel stated there was not. The court again asked, "Are there any written materials other than the presentence

report that I should take into account?" Mr. Gonzalez-Huerta's lawyer replied, "Nothing on behalf of the defendant, Judge." The court then stated its intention to sentence Mr. Gonzalez-Huerta to 57 to 71 months' incarceration and asked, "Are you in agreement with that?" Defense counsel replied, "Yes, your honor." Yet again, the court asked defense counsel, "would you like to make a statement on behalf of Mr. Gonzalez at this time?" Defense counsel thanked the Judge for sentencing at the low end of the range and stated that he had informed Mr. Gonzalez-Huerta that he was eligible for good-time credits. This record, at best, leaves me only with speculation that the District Court would have issued a lower sentence if it had sentenced under a non-mandatory Guideline regime.

The Court in *Jones v. United States*, 527 U.S. 373 (1999), which was a capital case, instructs that such speculation about a possible lighter sentence cannot satisfy the third prong of plain error. The Court held that when "the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights." *Jones*, 527 U.S. at 394–95; *see also  United States v. Rodriguez*, 398 F.3d 1291, 1299–1301  (11th Cir. 2005) (applying *Jones* to a constitutional *Booker* error case), *petition for cert. filed*, (U.S. Feb. 23, 2005) (No. 04-1148). The Court faced a similar issue in *Romano v. Oklahoma*, 512 U.S. 1 (1994), another capital case. In *Romano*, the Court held that even if the sentencing jury considered an impermissible factor in

recommending a death sentence, the defendant could not demonstrate that substantial rights were affected when that "conclusion necessarily rests upon one's intuition." *Id*. at 14.

This Court faces a similar situation here. Mr. Gonzalez-Huerta urges that if he were resentenced, the District Court would enter a lower sentence. But this conclusion, as in *Romano*, necessarily rests upon Mr. Gonzalez-Huerta's intuition that the sentencing court would employ its newfound sentencing discretion to enter a lower sentence. One could just as easily intuit that the court here would enter the same sentence. Indeed, in many cases, although not in this case, a reviewing court could easily intuit that the district court would impose a greater sentence on remand. *Cf. United States v. Forbes*, slip op. No. 03-1597, 2005 WL 481605, *2 (2nd Cir. Mar. 1, 2005) (unpublished) ("We note that should Forbes determine upon remand that for whatever reason, including the possibility that he might expose himself to a higher sentence, he does not in fact seek resentencing, he may so inform the court."). Therefore, I would hold that Mr. Gonzalez-Huerta has not met his burden.

The dissent relies heavily on post-*Booker* sentencing statistics from the United States Sentencing Commission. *See* Linda D. Maxfield, U.S. Sentencing Comm'n, *Data Extract on March 3: Numbers on Post-Booker Sentencings* at 2 (Mar. 14, 2005) (available at http://www.ussc.gov/Blakely/booker_030305.pdf)

(last visited Mar. 30, 2005). Relying on these statistics, the dissent states that 13.7 percent of all sentences post-*Booker* are below the Guidelines range when the Government does not recommend a departure. The dissent argues that this statistical variance suggests that both the third and fourth prongs of plain-error review are met in most non-constitutional *Booker* plain error cases. This lone statistic, however, does not display the whole picture.

The rate of non-government-sponsored, below-Guidelines-range sentences is only slightly greater post-*Booker* than before *Blakely* and *Booker* were handed down. *See* Linda D. Maxfield, U.S. Sentencing Comm'n, *Data Extract on March 15: Numbers on Post-Booker Sentencings* at 10 (Mar. 22, 2005) (available at http://www.ussc.gov/Blakely/booker_032205.pdf) (last visited Mar. 30, 2005). In Fiscal Year 2002 (i.e., before *Blakely*), 11.9 percent of defendants were sentenced below the Guidelines range without government sponsorship. *Id*. Post-*Booker*, 13.7 percent of defendants are sentenced below the Guidelines range without government sponsorship. *Id*. This is a change of only 1.8 percentage points. This 1.8 percentage point increase in the likelihood of a lower sentence—without any case-specific indicia that a lower sentence would be entered—does not show "a reasonable probability that, but for the error claimed, the result of the proceeding [in this case] would have been different." *United States v. Dominguez Benitez*, 542 U.S. —, 124 S. Ct. 2333, 2339 (2004).

Even more telling, in Fiscal Year 2002, only 0.8 percent of sentences were *above* the Guidelines range. Maxfield, U.S. Sentencing Comm'n, *Data Extract on March 15: Numbers on Post-Booker Sentencings* at 10. Post-*Booker*, 1.9 percent of sentences are above the Guidelines range. *Id*. This is a change of 1.1 percentage points. If this Court were to rely upon generalized statistics as the dissent suggests, then it would face a situation in which, post-*Booker*, a defendant has a 1.8 percentage point increased chance of a below-Guidelines-range sentence and a 1.1 percentage point increased chance of an above-Guidelines-range sentence. Without any case-specific indicia that a lower (or greater) sentence would be given, whether these statistics show a reasonable probability that a lower sentence would be entered is a "conclusion [that] necessarily rests upon one's intuition." *Romano*, 512 U.S. at 14.[1]

Because I would also hold that Mr. Gonzalez-Huerta bears the burden to

---

[1]Even focusing just on post-*Booker* statistical data, there is an important distinction that the dissent fails to mention. Of the 13.7 percent of sentences entered below the Guidelines range, 4.7 percent of those lower sentences were based upon Guidelines approved "downward departures." Maxfield, U.S. Sentencing Comm'n, *Data Extract on March 3: Numbers on Post-Booker Sentencings* at 2. Thus, 8.3 percent of "[a]ll cases explicitly cit[e] either US v Booker or 18 USC § 3553 as a reason for a sentence below the guideline range . . . . [or] do not provide a reason for the below-guideline sentence." *Id*. at 2 n.3. Hence, post-*Booker* only 8.3 percent of sentences receive a non-Guidelines approved lower sentence. Here, Mr. Gonzalez-Huerta does not argue that any additional Guidelines departures apply. As such, a proper reading of the post-Booker-only statistics places Mr. Gonzalez-Huerta in a category where only 8.3 percent of defendants have received lower sentences.

meet the third prong of plain-error review and that he does not bear his burden, I would affirm based upon the third prong of plain-error review as well as the fourth.

United States v. Gonzalez-Huerta, No. 04-2045

**EBEL,** Circuit Judge, concurring.


I agree with the majority's decision to affirm Gonzalez-Huerta's sentence under the fourth prong of the Olano[1] plain-error test and therefore I join Sections I, IIA, IIB, IID, and III of the majority opinion. However, I disagree with the majority's analysis and conclusion reached under the third prong of the Olano plain-error analysis (Maj. op. sections IIC), and accordingly I do not join those sections of the majority opinion. Regarding the prejudice-prong analysis, I believe that Judge Briscoe got it right, and accordingly, I join Section IV of her concurrence. Regarding the fourth prong of the Olano plain-error analysis, as noted above, I join Section IIE of the majority opinion. I join Part II of Judge Hartz's concurrence. Finally, I add this concurring opinion to offer some additional analysis applicable to the fourth-prong analysis.

When an appellant meets the first three prongs of the plain-error analysis, as Gonzalez-Huerta has in this case, "an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Cotton, 535 U.S. 625, 631 (2002) (quotation omitted). I agree with the majority opinion that the plain error in this case does not seriously affect the

---

[1]     United States v. Olano, 507 U.S. 725 (1993).

fairness, integrity or public reputation of judicial proceedings, but I write separately to discuss the specific factors that lead me to that conclusion.

Judge Hartz has addressed the fourth prong in some detail in his concurrence, and I agree with his reasoning.[2]  The majority opinion, and Judge Hartz's concurrence, appropriately note that the sentencing guidelines' purpose was to make sentencing more uniform and, thus, more fair.  They observe, therefore, that it would not generally advance the fairness, integrity or public reputation of judicial proceedings, in a systemic sense, to remand individual cases for resentencing after United States v. Booker, 125 S. Ct. 738 (2005), where the sentence already imposed falls within the range established by those guidelines.  Rather, a sentence within the applicable guideline range generally represents a sentence within the national norms adopted for such similarly convicted defendants.

Building on this reasoning, I would suggest at least three non-exclusive factors that this court should consider in determining whether to notice and correct Booker error that has affected an appellant's substantial rights.

First, was the plain error constitutional error?  This court applies a less restrictive plain-error analysis whenever an appellant urges a constitutional error.

---

[2]     I agree with both the majority opinion and with Judge Hartz that we cannot conflate the third and fourth prongs of the plain-error analysis.  Rather, we must address these two inquiries separately.

See <u>United States v. Brown</u>, 316 F.3d 1151, 1155 (10th Cir. 2003). If there had been constitutional error here that affected Gonzalez-Huerta's sentence, it would be much more likely to cast judicial proceedings in disrespect and would be much harder for us to uphold. <u>See, e.g.</u>, <u>United States v. McDaniel</u>, 398 F.3d 540, 549 (6th Cir. 2005) (holding Sixth Amendment <u>Booker</u> error would diminish fairness of criminal sentencing scheme). But in this case the district court's error in treating the sentencing guidelines as mandatory rather than only advisory was not constitutional error.

The second factor I would consider is whether an appellant's sentence falls within the guideline range, now viewed as advisory, for the defendant's particular conduct and criminal history. Unlike a guilt/innocence determination, which is generally an "either-or" proposition, sentencing is instead "the choice of a point within a range established by Congress." <u>United States v. Paladino</u>, Nos. 03-2296, 03-2383, 03-2386, 04-1951, 04-2339, 04-2378, 2005 WL 435430, at *8 (7th Cir. Feb. 25, 2005). In this case, the district court imposed a sentence that fell within the applicable guideline range. There is, then, a comfort level here because Gonzalez-Huerta received a sentence similar to the sentence most similarly historied defendants in the United States would have received for the

crime for which he was convicted.[3]  See Brown, 316 F.3d at 1161.

Third, I would consider whether there was evidence in the record or proffered that would suggest that, if we remanded this case for resentencing, the district court would likely impose a significantly different sentence.[4]  See id. at

---

[3]      Admittedly, this will be true of most sentences that fall within the previously mandatory guideline range.  Nevertheless, it is important to consider this factor, even though it will support denying relief in most plain-error cases.  And this factor alone is not dispositive.  The fourth prong of the plain-error analysis is, at its core, a discretionary prong, yet one that places a heavy burden on the party seeking to invoke it.  Whether a sentence is within a societally approved range is a strong factor, but only one factor among several that we should consider in deciding whether to exercise our discretion to grant plain-error relief.

[4]      While this factor overlaps, to some degree, with the third prong's analysis, it is also relevant here under the fourth prong.  Nevertheless, whether a defendant can show that he would likely receive a substantially lighter discretionary sentence on remand seems to me to be a necessary component of any fairness evaluation under the fourth prong.  And, unlike the third prong's analysis, here we need not make the binary determination of whether or not the appellant was prejudiced by the plain error, we need not worry about blurring the distinction between plain and harmless error, and we need not engage in backward-looking speculation of an unknowable judicial mindset.  Instead, at the fourth prong, we can apply our own objective analysis to determine whether a different sentence under a discretionary scheme is likely.  Further, this factor does not drive the fourth-prong analysis like its does the third prong.  Again, this is but one of several factors that we will consider before determining whether or not to exercise our discretion to notice and correct plain error.  If prejudice is uncertain, we can simply take that uncertainty into account in deciding how much weight to give this factor under the fourth-prong analysis.

In this case, I did not find the absence of such evidence sufficient to override the defendant's showing of prejudice under the third prong because he made a sufficient showing of prejudice in light of his sentence being at the very bottom of a sentencing range believed by the judge to be a mandatory range,

(continued...)

-4-

1163.  It seems to me that one aspect of whether the defendant received an unfair sentence is whether the sentence would likely change to a significant degree if he were returned to the district court for discretionary resentencing.  On this record, however, there is no such evidence, nor is any such evidence proffered.

In this case, then, these three fourth-prong <u>Olano</u> factors all cut against Gonzalez-Huerta.  There was no constitutional error; Gonzalez-Huerta's sentence fell within the applicable guideline range, indicating he received the same sentence that other similarly convicted defendants would have received, so there was nothing unfair about his sentence from a societal perspective; and there is no evidence in the record or proffered to suggest that the district court, on remand, able to exercise greater discretion, would impose a significantly different sentence.  Thus, there is no showing that even from the defendant's unique perspective there was anything unfair about the sentence he received.  For these reasons, I would conclude that this court need not notice the district court's sentencing error, in treating the guidelines as mandatory, because the error does not seriously affect the fairness, integrity or public reputation of judicial

---

[4](...continued)
particularly when he had little incentive either to object to the sentence or to put on mitigating evidence given the prevailing case law.  In the fourth-prong analysis, I would look to see whether, notwithstanding that disincentive, there is anything in the record or proffered that would suggest a substantially different sentence if we were to remand.

proceedings in this case.

04-2045, *United States v. Gonzalez-Huerta*

**HARTZ**, Circuit Judge, concurring:


I.

I join Judge Tacha's opinion for the court.  I write separately to focus on how the remedy provided by *Booker* affects plain-error review.

II.

Defendant's sentence must be affirmed.  Relief under the plain-error doctrine is not proper, because a remand for resentencing would not advance fairness or the integrity of judicial proceedings and would more likely injure the reputation of the courts than improve it.  Defendant was sentenced in accordance with national norms incorporated within sentencing guidelines established by a sentencing commission whose charter for two decades has been to improve the fairness and uniformity of sentencing in the federal courts.  To remand for resentencing in the absence of evidence in the record that the guideline range would be inappropriate for this defendant would serve only to permit the district court to deviate from those guidelines in the exercise of an idiosyncratic personal view of fairness.  Nothing in the record suggests that the guidelines have failed to accommodate a significant feature of Defendant's crime or personal history, and the original sentence was not unreasonable.  My reasoning follows:

"No procedural principle is more familiar . . . than that a constitutional

right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (internal quotation marks omitted). Nevertheless, there is also a long tradition of correcting unpreserved errors in limited circumstances. Fed. R. Crim. P. 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under the plain-error doctrine a defendant who has failed to preserve a claim of error in district court is entitled to relief only when (1) the district court committed error under the law in effect at the time the appeal is heard, (2) the error is obvious under that law, and (3) the error affected the defendant's substantial rights. Rule 52(b) then "leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted).

The first two prongs of the plain-error test are not disputed in this case. Most of the appellate decisions regarding plain error in *Booker*-issue cases have focused on the third prong—the effect of the error on the defendant's substantial rights. But because of the unusual nature of the *Booker* decision, addressing the propriety of the exercise of discretion (what I will refer to as the fourth prong)

-2-

may often enable the appellate court to avoid the troubling third-prong issues that have divided the other circuits.

What was unusual about the *Booker* decision was the disconnect between the constitutional violation and the remedy. To be sure, the remedy (making the Sentencing Guidelines advisory only) cures the constitutional violation (permitting the judge to find by a preponderance of the evidence the facts necessary to impose a sentence of such severity). Ordinarily, however, the cure for a constitutional violation is more direct: If the court improperly instructed the jury, the case must be retried with a proper instruction; if inadmissible evidence was presented to the jury, the case must be retried without the evidence, etc. In those cases if a constitutional error—such as the admission of evidence barred by the Confrontation Clause—affected the Defendant's substantial rights (thus satisfying prong three of the plain-error test), it is ordinarily natural to conclude that the fourth prong is also satisfied and reversal is necessary in the interest of fairness, integrity, and the public reputation of judicial proceedings. Not to reverse to correct the error is to ignore the injury the defendant suffered from the violation of his or her constitutional rights.

Such would also be the appropriate approach had the remedial opinion in *Booker* been otherwise. If, say, the Supreme Court had decided that the cure for *Booker* error was to require a retrial at which the jury would have to find beyond

a reasonable doubt all facts needed to determine the offense level used to calculate the guideline range, then the fourth prong would ordinarily be satisfied if the defendant had been prejudiced by the trial judge's making a critical finding by a preponderance of the evidence.

But that was not the remedy adopted in *Booker*. Even if the judge had made no critical finding, a defendant who preserved error is entitled to resentencing with the guidelines no longer being mandatory. And when the judge did make a critical finding, the remedy is not to set aside the improper finding but, again, only to require resentencing under a discretionary-guideline regime. As I shall explain, this is highly significant in applying plain-error's fourth prong.

As stated in *Olano*, discretion should not be exercised to correct a forfeited error "unless the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted). This language may suggest that in exercising discretion whether to correct the error, the appellate court should look only backwards—at, say, the unfairness or damage to the reputation of judicial proceedings caused by the error in the district court. But surely the underlying concerns are simply fairness, integrity, and the public reputation of the courts. And those virtues can also be viewed in light of the remedy to be provided for the error—in other words, by looking forward to see whether correcting the error will advance those ends. If

granting the appellant the relief to which he or she would be entitled had the issue been preserved in district court would not advance the fairness, integrity, or public reputation of judicial proceedings, why should the appellate court exercise its discretion to grant that relief?  In this regard, I think it noteworthy that in rejecting relief under the plain-error doctrine in a fairly recent case, the Supreme Court observed that "it would be the reversal of a conviction such as this [and not affirmance] which would [seriously affect the fairness, integrity or public reputation of judicial proceedings]." *Johnson v. United States*, 520 U.S. 461, 470 (1997).

Thus, it seems to me essential in plain-error *Booker* cases to determine whether reversal and remand for resentencing by a judge under a discretionary-guideline regime would advance fairness, integrity, or the public reputation of the courts.  To resolve the issue requires examination of what purpose would be served by a remand to allow the sentencing judge to deviate from the sentencing range set by the guidelines.

The federal sentencing guidelines, it must be remembered, were the product of concern about the unfairness arising from deviations in sentencing that could be attributed only to the idiosyncracies of individual judges.  Prior to enactment of the Sentencing Reform Act of 1984, the broad discretion enjoyed by sentencing judges "led to perceptions that 'federal judges mete out an unjustifiably wide

range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances.'" *Koon v. United States*, 518 U.S. 81, 92 (1996), quoting S. Rep. No. 98-225, p. 38 (1983). Such perceptions could only damage the reputation of the courts. The 1984 statute was intended to reduce the problem. Writing for the Court in *United States v. Booker*, 125 S. Ct. 738 (2005), Justice Breyer spoke of "the increased uniformity of sentencing that Congress intended the Guidelines system to achieve." *Id*. at 757. *See also id*. at 785 (Stevens, J. dissenting) ("'[T]he core function of the guidelines and the underlying statute . . . is to reduce disparity in sentencing and restore fairness and predictability to the sentencing process.'" (quoting 133 Cong. Rec. 33109 (1987) (remarks of Sen. Hatch))); *id*. at 789 (Scalia, J., dissenting) ("Justice Breyer's opinion for the Court repeatedly acknowledges that the primary objective of the Act was to reduce sentencing disparity."). That purpose survives *Booker* although, of course, the discretion now granted to sentencing judges will decrease uniformity.

To further the objectives of fairness and uniformity, the Sentencing Commission has labored for two decades to establish national norms for sentencing. *See Mistretta v. United States*, 488 U.S. 361, 369-70 (1989) (summarizing responsibilities of the Commission). These norms reflect the factors that should appropriately be considered in sentencing and the weight to be

given those factors. The sentencing judge pre-*Booker* could depart from the guidelines sentencing range, but only when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). *See generally Koon*, 518 U.S. at 92-96 (describing operation of guidelines). No doubt many sentencing judges have disagreed with the guidelines ranges in particular cases. But Congress, surely aware of the potential for the guidelines to offend the sensibilities of sentencing judges, chose uniformity as worth that cost.

What, then, is accomplished by remanding for resentencing when the sentencing judge's original fact findings are not questionable and the court correctly applied the Sentencing Guidelines? That depends. In some circumstances it will be apparent from the record on appeal that the guidelines process has failed—that the result is objectively unreasonable. To remand for resentencing in such circumstances may be necessary to advance "fairness, integrity, and the public reputation of judicial proceedings." In the great bulk of cases, however, no such unfairness appears, and the sole purpose of a remand for resentencing would be to allow one party or the other to benefit from the idiosyncratic views of the particular judge. Remanding for resentencing in such

circumstances may be "fair" in the eyes of the sentencing judge and the prevailing party, but a sentence outside the national norms set by the guidelines is not fair when viewed from the perspective of the federal criminal justice system as a whole, and the process of remanding to create sentencing disparities will injure "the public reputation of judicial proceedings."

This view is not contrary to the mandate in *Booker*. *Booker* recognizes the injustice of disparate sentencing. To be sure, the mandate will result in greater sentencing disparities. But that is an undesirable consequence of the Supreme Court's ruling, not the ruling's goal. Although disparities may be a necessary, unavoidable consequence of granting relief to those who preserved an *Apprendi* or *Blakely* argument at sentencing, the plain-error doctrine does not require that consequence to be magnified by granting relief to those who did not preserve below the claims they are raising with us.

Turning to the present case, nothing in the record suggests that Defendant's original sentence was unreasonable. The fourth prong of the plain-error test not being satisfied, the sentence must be affirmed.

**BRISCOE**, J., joined by **SEYMOUR**, J., and **HENRY**, J., concurring in part and dissenting in part, and joined by **EBEL**, J., as to Section IV, and **LUCERO**, J., as to Section V.

I agree with the majority that with the issuance of United States v. Booker, 125 S.Ct. 738 (2005), we must now conclude the district court erred by applying the Sentencing Guidelines in a mandatory rather than advisory fashion at the time it sentenced Gonzalez-Huerta. Although I agree that this error was neither constitutional nor structural in nature, I disagree that the error does not warrant correction. When Gonzalez-Huerta was sentenced, no one in the courtroom – neither the district court nor counsel – knew of or applied the correct law. In my view, this error not only affects Gonzalez-Huerta's substantial rights, it also seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings. Accordingly, I would remand this case for resentencing.

I.

In September 2003, Gonzalez-Huerta was indicted by a federal grand jury on one count of reentry by a deported alien previously convicted of an aggravated felony, in violation of 8 U.S.C. § 1326. Gonzalez-Huerta pled guilty to that charge in November 2003, and was sentenced by the district court on March 1, 2004. At the time of sentencing, Gonzalez-Huerta admitted all of the relevant facts set forth in the presentence investigation report, including the fact of his

prior conviction. Based upon those admitted facts, the district court sentenced Gonzalez-Huerta to 57 months' imprisonment, a sentence at the bottom of the applicable guideline range (57-71 months). Judgment was entered by the district court on March 2, 2004, and Gonzalez-Huerta filed a notice of appeal on March 8, 2004.

As these facts indicate, Gonzalez-Huerta's sentencing on March 1, 2004, predated the Supreme Court's rulings in both <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (June 24, 2004), and <u>Booker</u> (January 12, 2005). Although <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), predated Gonzalez-Huerta's sentencing, its holding that any fact increasing a sentence beyond the statutory maximum must be submitted to a jury was seemingly inapplicable to Gonzalez-Huerta's case, since Gonzalez-Huerta's sentence did not exceed the statutory maximum penalty and the district court did not engage in any fact-finding. Not until after Gonzalez-Huerta had filed his notice of appeal did the Supreme Court issue <u>Blakely</u> and indicate, in the context of a Washington state case, that the "statutory maximum sentence" for <u>Apprendi</u> purposes is the maximum guideline sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.

On September 16, 2004, Gonzalez-Huerta filed his original appellate brief asserting in pertinent part that, in light of <u>Blakely</u>, "the federal Sentencing

Guidelines [we]re unconstitutional and not severable." Aplt. Br. at 4. Following the issuance of <u>Booker</u>, we directed the parties to file supplemental briefs. Gonzalez-Huerta now asserts that the district court erred in sentencing him because, contrary to <u>Booker</u>, it applied the Sentencing Guidelines in a mandatory rather than advisory fashion. Gonzalez-Huerta further argues that this error was both constitutional and structural in nature. Accordingly, Gonzalez-Huerta contends he is entitled to be resentenced.

II.

In <u>Booker</u>, the Supreme Court addressed two questions: "whether [its] <u>Apprendi</u> line of cases applies to the Sentencing Guidelines, and if so, what portions of the Guidelines remain in effect." 125 S.Ct. at 747. With respect to the first question, the Court held that its <u>Apprendi</u> line of cases, including <u>Blakely</u>, "applies to the Sentencing Guidelines." <u>Id.</u> at 755. Thus, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Id.</u> at 756. As for the second question, the Court, in what can be referred to as its "remedial holding," "answer[ed] the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1) (Supp. 2004), incompatible with [its] constitutional

-3-

holding." Id. More specifically, the Court "conclude[d] that this provision must be severed and excised, as must one other statutory section, § 3742(e) (main ed. and Supp. 2004), which depends upon the Guidelines' mandatory nature."[1] Id. at 756-57. The result, the Court held, was to "make[] the Guidelines effectively advisory." Id. at 757. In other words, the Court held, "[i]t requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)." Id.

In its remedial holding in Booker, the Court outlined how its decision was to be applied:

> [W]e must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review. (citations omitted). That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.

125 S.Ct. at 769.

At least four directives can be drawn from this language. First, Booker is

---

[1] Section 3742(e) sets forth standards of review on appeal, including de novo review of departures from the applicable Guidelines range.

-4-

to be applied retroactively to cases, such as Gonzalez-Huerta's, that were pending on direct review at the time of Booker's issuance.  Second, not every case pending on direct review at the time of Booker's issuance will involve a Sixth Amendment sentencing violation or require a new sentencing hearing.  Third, "ordinary prudential doctrines," including the plain error test, are expected to be applied to cases pending on direct review at the time of Booker's issuance.  Finally, the resolution of cases pending on direct review that do not involve a Sixth Amendment violation may hinge upon application of the harmless-error doctrine.

Application of these directives requires a reviewing court to first determine the type of error(s) at issue.  As Booker makes clear, a case pending on direct review at the time of the opinion's issuance can potentially involve (a) a Sixth Amendment violation resulting from the district court's enhancement of the defendant's sentence based upon judicially-found facts, (b) a violation of Booker's remedial holding, i.e., the district court's treatment of the Sentencing Guidelines as mandatory rather than discretionary, or (c) both.  After determining the type of alleged error(s) at issue, a reviewing court must then determine whether the defendant raised the issue(s) below and, in turn, the standard of review that should be applied to the alleged error(s).

III.

Turning to Gonzalez-Huerta's appeal, it is undisputed that he has asserted one Booker-related error, i.e., that the district court in his case applied the Sentencing Guidelines in a mandatory rather than discretionary fashion (what the majority refers to as "non-constitutional Booker error").[2]  The next question, and the one on which our en banc review is most heavily focused, is what standard of review to apply to that alleged error.

Generally speaking, we apply one of two standards of review to errors arising in criminal cases.  Which standard of review will apply depends upon whether or not the defendant asserted a timely objection to the error in the district court.  If the defendant timely objected, the error is generally considered to be "nonforfeited," and we in turn apply the "harmless error" standard outlined in Federal Rule of Criminal Procedure 52(a).  United States v. Olano, 507 U.S. 725, 731 (1993).  Under that standard, "[a]ny error . . . that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52(a).  If the defendant did not timely object to the error, it is generally considered "forfeited," and we in turn apply the "plain error" standard outlined in Federal Rule of Criminal Procedure 52(b).  Olano, 507 U.S. at 731.  Under Rule 52(b), a court of appeals may correct

_____

[2] I agree with the majority that the error asserted by Gonzalez-Huerta is neither constitutional nor structural in nature.

(1) an error, (2) that is plain, and (3) that affects substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Cotton, 535 U.S. 625, 631 (2002). Although Rule 52(a) and Rule 52(b) "require[] the same kind of inquiry," there is one important difference between them: in plain error cases "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Olano, 507 U.S. at 734.

The difficulty we face in this case is that the error asserted by Gonzalez-Huerta does not fit neatly within either of these two categories. To be sure, Gonzalez-Huerta did not assert the error below and instead is raising it for the first time on appeal. If we were to consider only that fact, it would be easy to classify the error as "forfeited" and then move to a straightforward application of the plain error standard outlined in Rule 52(b). To do so, however, would ignore the realities of this case. At the time Gonzalez-Huerta was sentenced, the Federal Sentencing Act made application of the United States Sentencing Guidelines mandatory. See 18 U.S.C. § 3553(b)(1). Further, it is safe to say that no one at that time, including Gonzalez-Huerta and the district court, could have predicted the absolute sea-change in federal sentencing that would ultimately be wrought by the Supreme Court in its Booker remedial holding, i.e., severing and excising "the provision of the federal sentencing statute that makes the Guidelines mandatory,"

125 S.Ct. at 756, so as to render the Guidelines advisory. Thus, in contrast to the overwhelming majority of plain error cases, it is unreasonable in my view to conclude that Gonzalez-Huerta could and should have raised the issue below. See O'Connor v. Ohio, 385 U.S. 92, 93 (1966) (refusing to punish criminal defendant for failing to anticipate a new constitutional rule recognized during the pendency of his direct appeal); United States v. Viola, 35 F.3d 37, 42 (2d Cir. 1994) ("If we were to penalize defendants for failing to challenge entrenched precedent, we would be insisting upon an omniscience on the part of defendants about the course of the law that we do not have as judges. Imposing such a duty would only encourage frivolous objections and appeals."), abrogated on other grounds, Salinas v. United States, 522 U.S. 52, 65-66 (1997); see generally United States v. Dominguez Benitez, 124 S.Ct. 2333, 2340 (2004) (noting that one of the primary policies underpinning Rule 52(b) is "to encourage timely objections"). It therefore strikes me as disingenuous, as well as unfair, to treat Gonzalez-Huerta's error like the vast majority of other plain errors, and in turn to require Gonzalez-Huerta to satisfy the typical plain error standard.[3]

---

[3] In United States v. Labastida-Segura, 396 F.3d 1140, 1142-43 (10th Cir. 2005), this court applied the harmless error standard to a defendant who, like Gonzalez-Huerta, asserted a non-constitutional Booker error. The only difference is that the defendant in Labastida-Segura was sentenced after Blakely and thus was able to assert a Blakely-based challenge to the Guidelines. Id. at 1142. Notably, however, the defendant in Labastida-Segura did not accurately predict
(continued...)

Gonzalez-Huerta's case also fails to fit neatly within the plain error framework for another reason. As noted, a plain error cannot be corrected unless it affects a defendant's substantial rights. Olano, 507 U.S. at 734. "[I]n most cases," this means "that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Id. Typically, an appellate court applying the plain error test is able to make a reasonable determination of an error's prejudicial effect on the district court proceedings by reviewing the record on appeal. E.g., Johnson v. United States, 520 U.S. 461, 470 (1997) (concluding that, despite district court's plain error of deciding the issue of materiality, i.e., Gaudin error, in a perjury prosecution rather than submitting it to the jury, there was no basis for reversal because "the evidence supporting materiality was 'overwhelming'"); Harrington v. California, 395 U.S. 250, 254 (1969) ("Our

---

[3](...continued)
the remedy that would ultimately be adopted by the Supreme Court in Booker, i.e., he did not object before the district court by asserting the Guidelines should be applied in an advisory rather than mandatory fashion. Instead, he asserted that the unconstitutional provisions of the Guidelines were not severable. Id. Nevertheless, this court treated the non-constitutional Booker error as if it had been raised below, applied the harmless error standard, and remanded the case for resentencing. Id. at 1143.

Although it is unclear at this point, perhaps this court, given the holding in Labastida-Segura, will adopt an approach similar to that recently announced by the First Circuit, i.e., "offer[ing] to treat almost any colorable claim in the district court as preserving the Booker issue and avoiding plain error requirements." United States v. Heldeman, No. 04-1915, 2005 WL 708397, at *3 (1st Cir. Mar. 29, 2005).

judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the" error at issue). Here, however, Gonzalez-Huerta's sentencing proceedings were conducted by the district court under what we now know was the mistaken assumption that the Sentencing Guidelines were to be applied in a mandatory fashion. Thus, there was no opportunity or incentive, as there is now post-Booker, for Gonzalez-Huerta or the government to present evidence or arguments outside of the bounds allowed by the Guidelines.[4] See United States v. Barnett, 398 F.3d 516, 528 (6th Cir. 2005) ("Under the new post-Booker framework, the district court is empowered with greater discretion to consider the factors provided in 18 U.S.C. § 3553(a) in determining a proper sentence."); United States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005) ("It will . . . be impossible to tell what considerations counsel for both sides might have brought to the sentencing judge's attention had they known that they could urge

---

[4] For example, in his supplemental appellate brief, Gonzalez-Huerta argues that "[u]nder the old [mandatory guideline] scheme, . . . the [district] court was not allowed to consider that some jurisdictions have a 'Fast Track' program for illegal reentry defendants that allows them to receive substantially lower sentences than are available to defendants in jurisdictions without such a program." Aplt. Supp. Br. at 10 (citing United States v. Armenta-Castro, 227 F.3d 1255, 1277 (10th Cir. 2000)). Under the post-Booker advisory guideline scheme, however, he notes that "a sentencing court is required to consider 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct,'" and thus it would be reasonable for the district court in this case on remand to "reduce the disparity produced by 'Fast Track' sentencing programs by lowering" his sentence since he "did not have the opportunity to benefit from such a program." Id.

-10-

the judge to impose a non-Guidelines sentence."); <u>United States v. Jaber</u>, No. CRIM.02-10201-NG, 2005 WL 605787, at *15 (D. Mass. Mar. 16, 2005) (taking into account, under § 3553(a), the fact that the defendant was on salary and did not take a profit from the drug organization, the fact that the defendant engaged in no criminal conduct during the two years prior to his arrest, and the fact that the defendant's post-conviction, pre-sentencing record was "perfect," even though his wife was "hospitalized and dysfunctional," his residence was foreclosed, and he was unable to find a meaningful job); <u>United States v. Ranum</u>, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005) (concluding that factors formerly forbidden to be considered under the Guidelines, such as a defendant's age, family ties and responsibilities, and physical, mental and emotional condition, may now be considered, post-<u>Booker</u>, pursuant to § 3553(a)); <u>see also</u> Steven G. Kalar, <u>Booker Advisory: Into the Breyer Patch</u>, 29 Champion 8, 15 (Mar. 2005) (suggesting that the "prohibited or discouraged departure" factors listed in Chapter 5H of the Guidelines "are tailor-made for the broader equitable analysis" that will now apply under <u>Booker</u>).  Likewise, there was no reason for the district court to give serious consideration to whether a sentence other than that suggested by the Guidelines was appropriate, nor was there any incentive for the district court to voice concerns about the operation of the Guidelines.  <u>See</u> <u>Barnett</u>, 398 F.3d at 528-29.  In sum, because the entire legal framework in which Gonzalez-Huerta's sentencing

-11-

occurred was flawed, there is no way for him to prove, and for us to accurately assess, the likelihood that the district court would have imposed a different sentence had it known it had the discretion to do so. In other words, "it would be exceedingly difficult for" Gonzalez-Huerta "to show that his sentence would have been different if the district court had sentenced him under [an] advisory, rather than the mandatory, Guidelines framework." Id. at 528; see also United States v. Paladino, Nos. 03-2296, 03-2383, 03-2386, 04-1951, 04-2339, 04-2378, 2005 WL 435430, at *8 (7th Cir. Feb. 25, 2005) (noting the difficulty of assessing the effect of a sentencing error because "sentencing . . . is the choice of a point within a range established by Congress, and normally the range is a broad one"); id. at *11 (recognizing "the impossible burden of proving that the sentencing judge would have imposed a different sentence had the judge not thought the guidelines mandatory"); Labastida-Segura, 396 F.3d at 1143 (applying harmless error standard to non-constitutional Booker error and concluding it was impossible to determine what sentence would have been imposed by the district court under an advisory Guidelines framework).

The majority quickly moves past this problem, suggesting only that prejudice might be found to exist if there are statements in the record from the sentencing court expressing dissatisfaction with the Guidelines sentence it believed, at the time, it was required to impose. Focusing the prejudice analysis

-12-

on such evidence, however, ignores the reality of the pre-Booker sentencing landscape. It is beyond dispute that the federal circuits, including our own, "repeatedly instructed sentencing courts pre-Booker to impose sentences within the applicable mandatory Guidelines range, with limited exceptions, and . . . consistently upheld the constitutionality of the Guidelines and their mandatory nature . . . ." Barnett, 398 F.3d at 528. In turn, "[t]his well-established case law substantially undermined any need or incentive for sentencing courts pre-Booker to note their objections and reservations in sentencing defendants under the then-mandatory Guidelines." Id. at 529; see also Heldeman, 2005 WL 708397, at *3 ("we have recognized that a district judge [pre-Booker] may well not have expressed his or her reservations because the guidelines made them hopeless"); Paladino, 2005 WL 435430, at *9 (suggesting that, pre-Booker, "[a] conscientious judge" was "one who took the guidelines seriously whatever his [or her] private views"). Thus, I agree with the Sixth Circuit that "[i]t would be improper," and indeed cruelly ironic, for us to now "require defendants such as" Gonzalez-Huerta "to produce this type of evidence–that sentencing courts had no reason to provide under our pre-Booker case law–in order to establish that their substantial rights have been affected." Barnett, 398 F.3d at 529.

IV.

Olano itself provides a way out of this thicket by recognizing that the

-13-

prejudice component (or the so-called "third prong") of the plain error test can be modified in extreme cases:

> We need not decide whether the phrase "affecting substantial rights" is always synonymous with "prejudicial." (citation omitted). *There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed. Nor need we address those errors that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice.* Normally, *although perhaps not in every case*, the defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights" prong of Rule 52(b).

507 U.S. at 735 (emphasis added). This language recognizes two possible exceptions to the "normal" formulation of the third prong. The first of these exceptions is for "structural errors," i.e., the so-called "special category of forfeited errors that can be corrected regardless of their effect on the outcome." Id. at 735; see Barnett, 398 F.3d at 526 (interpreting Olano in this manner); see also United States v. Dominguez Benitez, 124 S.Ct. 2333, 2339 (2004) (noting that only structural errors can entitle a defendant to relief "without regard to [their] effect on the proceeding[s]"); Cotton, 535 U.S. at 632 (suggesting the Court in Olano was referring to structural errors). Although Gonzalez-Huerta contends the error at issue is structural in nature, I agree with the majority that it is not.[5]

_____

[5] The majority states that "structural errors must, at a minimum, be constitutional errors." Maj. Op. at 11. Although the Supreme Court has sometimes used language suggesting that only constitutional errors can qualify as "structural errors," e.g., Neder v. United States, 527 U.S. 1, 14 (1999) ("Under our cases, a constitutional error is either structural or it is not."), the Fourth

(continued...)

That still leaves, however, the second potential exception recognized in Olano, i.e., errors that "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." 507 U.S. at 735. Obviously, this language was meant to refer to something other than structural errors. See Dominguez Benitez, 124 S.Ct. at 2339 (noting that, other than for structural errors, "relief for error is tied in some way to prejudicial effect"); Barnett, 398 F.3d at 526-27.

Like the Sixth Circuit in Barnett, I conclude that the error asserted by Gonzalez-Huerta falls within this second exception. 398 F.3d at 527-28 ("We are convinced that this is an appropriate case in which to presume prejudice under the Supreme Court's decision in Olano."). To begin with, it is apparent, for the reasons outlined above, that the task of making a specific showing of prejudice is nearly impossible for Gonzalez-Huerta and others situated similarly to him, i.e., that "set" of defendants who were sentenced prior to Booker and Blakely.

---

[5](...continued)
Circuit has expressly held that non-constitutional errors can also qualify as structural errors. See United States v. Curbelo, 343 F.3d 273, 280 (4th Cir. 2003) (holding, in a 2-1 decision, that, "whether violative of the Constitution or not, the error here is structural, and such errors 'invalidate the conviction' without any showing of prejudice."). Likewise, the Third Circuit and this court have suggested as much. See United States v. Stevens, 223 F.3d 239, 244 (3d Cir. 2000) (stating that nonconstitutional errors "generally cannot amount to a structural defect"); United States v. Lewis, 21 Fed. Appx. 843 (10th Cir. 2001) (unpublished decision) (concluding that non-constitutional errors can warrant automatic reversal) (implying, without directly concluding, that a violation of Fed. R. Crim. P. 8(c) was a structural error). Even assuming, arguendo, that structural errors can include non-constitutional errors, I would still conclude that the error asserted by Gonzalez-Huerta is not structural in nature.

-15-

Notwithstanding that fact, the available post-Booker data allows us to say with reasonable probability, and perhaps near-certainty, that some of the defendants within this "set" were in fact prejudiced by application of the mandatory Guideline regime. On March 22, 2005, the United States Sentencing Commission's Office of Policy Analysis issued a memorandum compiling data on post-Booker sentencings as of the close-of-business on March 15, 2005. Linda D. Maxfield, U.S. Sentencing Comm'n, Data Extract on March 15: Numbers on Post-Booker Sentencings (Mar. 14, 2005) (available at http://www.ussc.gov/Blakely/booker_030305.pdf). According to that data, approximately 36.0 percent of all post-Booker sentences were below the advisory Guideline range. Further, approximately 13.7 percent of all post-Booker sentences were below the advisory Guideline range for a reason other than a government-sponsored reduction.[6] Extrapolating from this data, it appears reasonable to assume that perhaps as many as 13.7 percent of all the defendants in our Booker

_____

[6] Notably, the percentage of post-Booker sentences falling below the advisory Guideline range for reasons other than a government-sponsored reduction has been steadily rising since the issuance of Booker. See Linda D. Maxfield, U.S. Sentencing Comm'n, Data Extract on March 3: Numbers on Post-Booker Sentencings (Mar. 14, 2005) (available at http://www.ussc.gov/Blakely/booker_030305.pdf) (noting that, as of March 3, 2005, 13.0 percent of all post-Booker sentences were below the guideline range for reasons other than a government-sponsored downward departure); Linda D. Maxfield, U.S. Sentencing Comm'n, Numbers on Post-Booker Sentencings (Feb. 28, 2005) (noting that, as of February 17, 2005, 12.0 percent of all post-Booker sentences were below the guideline range for reasons other than a government-sponsored downward departure).

plain-error set of cases, or approximately one out of every seven such defendants, would receive a below-Guideline sentence if they were sentenced under a discretionary Guideline regime. In other words, there is some data to suggest that one out of every seven of such defendants were prejudiced by application of the pre-Booker mandatory Guideline regime. Further, if we confine our analysis to only those defendants who, like Gonzalez-Huerta, received a pre-Booker sentence at the very bottom of the applicable Guideline range, it appears safe to assume that the percentage actually prejudiced by the mandatory application of the Guidelines is higher. I therefore conclude that the "most prudent course of action" in these unique circumstances is to apply the second Olano exception and presume prejudice. Id. at 529.

Although Olano provides ample support for application of the presumption of prejudice approach, I believe there is another source of case law that provides additional support. Our court and other circuits have recognized the "supervening-decision doctrine." See United States v. Santiago, 238 F.3d 213, 215 (2d Cir. 2001) (noting that when source of error is supervening judicial decision that alters settled law, it is appropriate to modify the third prong of the plain error rule so that the government bears the burden of persuasion); United States v. Washington, 12 F.3d 1128, 1139 (D.C. Cir. 1994) (recognizing doctrine and noting that it "reflects the principle that it would be unfair, and even contrary to the efficient

administration of justice, to expect a defendant to object at trial where existing law appears so clear as to foreclose any possibility of success."); see also Anixter v. Home-State Prod., 77 F.3d 1215, 1231-32 (10th Cir. 1996) (applying similar doctrine in civil case); United States v. Zeigler, 19 F.3d 486, 494 (10th Cir. 1994) (appearing to apply similar approach where government objected to defendant's sentence for the first time on appeal based on intervening Supreme Court decision that effectively overruled circuit precedent). This doctrine, which appears to be rooted in Olano[7], recognizes that "[a] defendant clearly has no duty to object to [something] that is based on firmly established circuit authority," and thus "cannot be said to have 'forfeited a right' by not making an objection, since at the time of trial no legal right existed." Viola, 35 F.3d at 42. Cases falling within the scope of this doctrine are treated in a manner similar to "harmless error review under Rule 52(a)," thereby requiring "the government [to] show that the error did not affect the defendant's substantial rights." Id. The "presumption of prejudice" approach appears to achieve much the same result as the supervening decision doctrine, albeit by modifying the analysis under the third prong of the plain error test rather than by channeling the case into the harmless error framework.

---

[7] Support for the doctrine can also be drawn from O'Connor, where the Supreme Court held that an Ohio state defendant's "failure to object to a practice which Ohio had long allowed [could not] strip him of his right to attack the practice following its invalidation" by the Supreme Court during the pendency of his direct appeal. 385 U.S. at 93.

In comparison to slavishly applying the traditional formulation of the third prong of the plain error test, adopting the "presumption of prejudice" approach will undoubtedly result in more of the relatively small set of plain-error Booker cases being remanded for resentencing. The costs associated with that result, however, are minimal in my view, particularly in comparison to the benefits of ensuring that defendants are not subjected to unnecessary and improper deprivations of their liberty. See United States v. Serrano-Beauvaix, Nos. 02-2286, 02-2682, 2005 WL 503247, at *10 (1st Cir. Mar. 4, 2005) (Lipez, J., concurring) ("Given what is at stake in sentencing decisions–the potential for additional months or even years in prison–I believe that the increased administrative burdens are a tolerable price to pay."); United States v. Williams, 399 F.3d 450, 456 (2d Cir. Feb. 23, 2005) ("A resentencing is a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel."); Barnett, 398 F.3d at 532 (Gwin, J., concurring) ("In summary, an unnecessarily restrictive plain error analysis will result in substantial additional work for this court and will save the district courts almost no time. * * * I believe it more efficient to remand this case to the district court for re-sentencing. Otherwise, we adopt a rule that results in an inordinate expenditure of appellate court resources, yet saves the district court little.").

The majority expresses three reservations about adopting the "presumption

-19-

of prejudice" approach. In my view, none of those reservations are persuasive. First, they assert that "in the twelve years since its decision in <u>Olano</u>, the [Supreme] Court has never again mentioned this category of presumed prejudice – let alone applied it to an analogous factual scenario." Maj. Op. at 13. Although this statement is true, it is equally true that the Supreme Court has never expressly repudiated the language in <u>Olano</u> discussing the category of presumed prejudice. Further, the majority cannot, in my view, point to any case that has come before the Supreme Court since <u>Olano</u> that has presented such a compelling case for application of that "presumed prejudice" exception. Indeed, if the error now asserted by Gonzalez does not fall within this exception, then I seriously question if any case ever will. Moreover, the majority overlooks the various post-<u>Olano</u> circuit cases that have applied the "presumption of prejudice" approach to other errors, <u>e.g.</u>, <u>Barnett</u>, 398 F.3d at 526- 27 (cataloging cases), as well as the cases cited above which have applied the supervening-decision doctrine.

Second, the majority suggests that because in some cases "the sentencing judge [may have] expressed unhappiness with the mandatory nature of the Guidelines on the record," "establishing that non-constitutional <u>Booker</u> error affects substantial rights is not an impossible task." Maj. Op. at 14. For the reasons already discussed, the fact that a handful of such cases may exist is not, in my view, a reasonable basis for rejecting the "presumption of prejudice" approach.

Third, the majority questions the "presumption of prejudice" approach because "placing the burden on the appellant is one of the essential characteristics distinguishing plain error from harmless error," and "[s]hifting the burden to the appellee would seriously blur this distinction and would be inconsistent with our precedent." Maj. Op. at 15. Again, for the reasons already discussed, it is apparent that this case and others like it do not fit neatly within either the harmless error or the plain error framework, and thus demand some type of meaningful exception. The fact that the "presumption of prejudice" approach may "blur th[e] distinction" between the two standards is not, in my view, a meaningful basis on which to reject the approach, particularly since the "presumption of prejudice" approach originated with the Supreme Court and not the lower federal courts, and because the approach is obviously suited for an exceedingly narrow range of cases. As for the alleged inconsistency between the "presumption of prejudice" approach and our precedent regarding plain error, the majority does not point to any cases similar to the one at hand, nor can it point to any cases in which we have rejected the "presumption of prejudice" approach.

## V.

With this modification of the burden of persuasion with respect to prejudice in place, I now turn to application of the plain error test. The first two prongs of

the plain error test, i.e., was there (1) an error that (2) was plain, cannot seriously be disputed in this case.[8]  In light of the remedial holding in Booker, it is apparent that the district court in this case erred in treating the Guidelines as mandatory rather than advisory.  Although this error was not "plain" at the time of Gonzalez-Huerta's sentencing (since Booker had not yet been issued at that time), it is the law at the time of the appellate decision that is relevant here.  See Johnson, 520 U.S. at 468 (holding that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal--it is enough that the error be 'plain' at the time of appellate consideration.").  Thus, in light of the remedial holding in Booker, the error is now plain.  E.g., Barnett, 398 F.3d at 525-26.

Applying the presumption of prejudice approach outlined above, the third prong of the plain error test, i.e., whether the plain error affected substantial rights, is also satisfied.  More specifically, the very real possibility that the district court in this case may have imposed a lower sentence under an advisory Guideline regime, combined with the near-impossibility of Gonzalez-Huerta demonstrating on the existing record that the district court likely would have done so, allows us to presume that Gonzalez-Huerta "was prejudiced by the imposition of a sentence under the mandatory Guidelines." Barnett, 398 F.3d at 529.  Further, there is

_____

[8] Every circuit that has applied a plain error analysis to a Booker error has agreed that the first and second prongs of the test are satisfied.  The government in this case likewise agrees that the first and second prongs of the test are satisfied.

nothing in the record that would rebut this presumption.[9]

That leaves the fourth prong of the plain error test. Under that prong, we must exercise our discretion to "correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). The question is whether that standard is satisfied here, where there is a reasonable probability that, had the district court applied the Guidelines in an advisory rather than mandatory fashion, Gonzalez-Huerta would have received a lesser sentence than the one actually imposed.

In United States v. Brown, 316 F.3d 1151, 1161 (10th Cir. 2003), we noted that the federal circuit courts "have not hesitated to exercise their discretion to correct" plain errors arising from sentencing where the "correct application of the sentencing laws would likely significantly reduce the length of the sentence." Although we did not quantify what would constitute a "significant reduction" in the length of a sentence, a review of relevant case law suggests that almost any reduction in the amount of actual incarceration is sufficient to meet this definition. E.g., Glover v. United States, 531 U.S. 198, 203 (2001) (concluding, in context of

---

[9] Like the Sixth Circuit in Barnett, I do not "discount the possibility . . . that in other cases the evidence in the record will be sufficient to rebut the presumption of prejudice." 398 F.3d at 529. Here, however, I am not aware of any "clear and specific" evidence in the record indicating that the district court would not have imposed a lower sentence under an advisory guideline regime. Id.

appeal from denial of 28 U.S.C. § 2255 motion, "that any amount of actual jail time" resulting from district court's misapplication of the Guidelines "has . . . significance" for purposes of assessing prejudice); United States v. Villegas, No. 03-21220, 2005 WL 627963, at *7 (5th Cir. Mar. 17, 2005) (concluding that, because district court's error increased Guideline-suggested sentence by at least five months, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings); United States v. Syme, 276 F.3d 131, 157-58 (3d Cir. 2002) (reaching similar conclusion where district court's error increased defendant's minimum guideline sentence by seven months); see also Paladino, 2005 WL 435430, at *9 ("It is a miscarriage of justice to give a person an illegal sentence that increases his punishment"); United States v. Smith, 267 F.3d 1154, 1160 (D.C. Cir. 2001) ("we have no trouble concluding that a misapplication of the burden of proof that results in a defendant serving a longer sentence adversely affects the fairness and integrity of the judicial proceeding."); United States v. Martinez-Rios, 143 F.3d 662, 678 (2d Cir. 1998) ("one would be hard-pressed to think of a more senseless injustice than the deprivation of a citizen's liberty for several months as a result of [an] . . . error."); cf. United States v. Phipps, 319 F.3d 177, 192 (5th Cir. 2003) (refusing to correct plain error where the erroneously long sentence ran concurrently with a valid longer sentence); Brown, 316 F.3d at 1162 (refusing to correct plain error that likely operated in defendant's

-24-

favor).

Because of the nature of the error at issue here, it is impossible to quantify precisely how much Gonzalez-Huerta's sentence might have been reduced had the district court applied the Guidelines in an advisory fashion. That is because, as already discussed, the error affected the entire legal framework applied by the district court and counsel when Gonzalez-Huerta was sentenced, and thus the record on appeal is simply not adequate to allow us to reasonably estimate what sentence the district court would likely have imposed had it applied the Guidelines in an advisory fashion. That said, it is not at all unreasonable to assume, particularly in light of the fact that Gonzalez-Huerta was sentenced at the very bottom of the applicable Guideline range, that, had the district court decided to exercise its discretion and deviate from the suggested Guideline range, it might have done so by imposing a sentence equivalent to that which would have been imposed under the next-lower Guideline range (51-63 months rather than 57-71 months). Doing so could conceivably have resulted in a reduction in Gonzalez-Huerta's sentence of up to six months. Under clearly established precedent, that potential reduction is serious enough to affect the "fairness, integrity or public reputation of judicial proceedings." See, e.g., United States v. Knight, 266 F.3d 203, 207 (3d Cir. 2001) ("application of an incorrect guideline range resulting in a sentence that is also within the correct range affects substantial rights"); United

-25-

States v. Osuna, 189 F.3d 1289, 1294 (10th Cir. 1999) (ordering resentencing in plain error case where, absent district court's sentencing error, defendant's guideline range would have been 46-57 months rather than 51-63 months); United States v. Weaver, 161 F.3d 528, 530 (8th Cir. 1998) (rejecting government's assertion that "error did not affect [defendant's] substantial rights because . . . sentence he received fell within the Guidelines range . . . which would have applied absent the error"); United States v. Spears, 159 F.3d 1081, 1088 (7th Cir. 1998) (remanding where juvenile offenses were wrongly included, resulting in wrong criminal history category: "[t]he district court looked at the wrong sentencing range when determining [defendant's] sentence. We have determined this to constitute plain error."); United States v. Martinez-Rios, 143 F.3d 662, 675-76 (2d Cir. 1998) (concluding that, although it was unclear whether correcting error would have any effect on sentencing level, remand was required under plain error analysis); United States v. Ford, 88 F.3d 1350, 1356 (4th Cir. 1996) (holding that where district court miscalculated criminal history points "[t]he error clearly affected [defendant's] substantial rights because the extra points caused [defendant] to be sentenced at a more severe guideline range"); United States v. Cabral-Castillo, 35 F.3d 182, 182 (5th Cir. 1994) (remanding sentence where defendant was sentenced under a mistaken range of between 188 and 255 months even though defendant's actual sentence, 188 months, fell within the proper range

-26-

of 151 to 188 months); <u>United States v. Robinson</u>, 20 F.3d 270, 273 (7th Cir. 1994) ("A sentence based on an incorrect guideline range constitutes an error affecting substantial rights and thus constitutes plain error."); <u>United States v. Plaza-Garcia</u>, 914 F.2d 345, 347-48 (1st Cir. 1990) (remanding sentence within both erroneously applied and correct Guideline ranges under plain error doctrine because sentence "may well have been influenced by the [erroneous] sentencing recommendation").

Even putting aside any estimates of how much Gonzalez-Huerta's sentence could reasonably have been reduced, I agree with the Sixth Circuit that the revolutionary nature of <u>Booker</u>'s remedial holding, standing alone, warrants the exercise of our discretion in cases like Gonzalez-Huerta's. More specifically, I conclude "it would be fundamentally unfair to allow [Gonzalez-Huerta's] sentence, imposed under a mandatory Guidelines regime, to stand in light of this substantial development in, and alteration of, the applicable legal framework." <u>Barnett</u>, 398 F.3d at 530; <u>see</u> <u>Crosby</u>, 397 F.3d at 115 ("[A] sentence unreasonable for legal error in the method of its selection is cause for concern because, in many cases, it will be impossible to tell whether the judge would have imposed the same sentence had the judge not felt compelled to impose a Guidelines sentence.").

Although the majority concludes that Gonzalez-Huerta has failed to satisfy the fourth prong of the plain error test, there are, in my view, at least five flaws in

the majority's reasoning.[10]  First, the majority all but ignores our prior precedent, and that of other circuits, recognizing that forfeited sentencing errors (including simple misapplications of Guideline provisions) can, and often do, affect the fairness, integrity, or public reputation of judicial proceedings.  Second, and relatedly, the majority fails (yet again) to acknowledge the dramatic change in sentencing law wrought by <u>Booker</u>, and instead suggests that the district court's "mandatory application of the Guidelines [was not] particularly egregious."  Maj. Op. at 20.  Were that characterization correct, I strongly suspect the Supreme Court would not now be vacating the judgments in the hundreds of criminal cases that were pending before it on direct review at the time of <u>Booker</u>'s issuance. Moreover, had the Supreme Court been in agreement with that characterization, it could easily have said so in <u>Booker</u>'s remedial holding, and thereby obviated the circuit-by-circuit wrangling that is now occurring over application of the plain error test to non-constitutional <u>Booker</u> errors.  Third, by suggesting that a sentence imposed within the Guidelines does not implicate the fairness, integrity, or public reputation of judicial proceedings, the majority fails to give full effect to <u>Booker</u>'s remedial opinion, and instead demonstrates a preference for the pre-<u>Booker</u>,

_____

[10] The majority suggests that "several courts of appeals have collapsed the third and fourth prong analyses."  Maj. Op. at 16.  I disagree.  In my view, the circuits that have found plain error in light of <u>Booker</u> simply subscribe to the position that "[i]t is a miscarriage of justice to give a person an illegal sentence that increases his punishment . . . ."  <u>Paladino</u>, — F.3d at —, 2005 WL 435430 at *9.

mandatory Guideline regime. We should judge the fairness, integrity, and reputation concerns not by whether the sentence was imposed under long-standing guidelines, but rather whether the sentence imposed satisfies those same concerns when reviewed under the changed law. Fourth, by suggesting that Gonzalez-Huerta cannot satisfy the fourth prong because his sentence was imposed within the Guidelines, the majority effectively usurps the function of discretionary sentencing that has been afforded to district courts by Booker. In other words, the majority refuses to afford the district court in this case an opportunity to exercise its discretion to sentence Gonzalez-Huerta simply because, in the majority's view, the Guideline sentence originally imposed is reasonable. The impropriety of this approach was succinctly outlined by the Fourth Circuit in United States v. Hughes, No. 03-4172, 2005 WL 628224, at *17 n.14 (4th Cir. Mar. 16, 2005):

> It is not enough for us to say that the sentence imposed by the district court is reasonable irrespective of the error. The determination of reasonableness depends not only on an evaluation of the actual sentence imposed but also the method employed in determining it. Moreover, declining to notice the error would be tantamount to performing the sentencing function ourselves. This is so because the district court was never called upon to impose a sentence under an advisory guideline regime. That the particular sentence imposed here might be reasonable is not to say that the district court, now vested with broader sentencing discretion, could not have imposed a different sentence that might also have been reasonable. We simply do not know how the district court would have sentenced [defendant] had it been operating under the remedial scheme announced in Booker.

Fifth, although the majority suggests that granting relief to Gonzalez-Huerta would

-29-

call into question the "tens of thousands [of] federal sentences" imposed under the Guidelines since their implementation, there is no indication in Booker that it was meant to be applied retroactively, and at least two circuits have expressly so held. See Humphress v. United States, 398 F.3d 855, 857 (6th Cir. 2005) (holding that Booker does not apply retroactively to initial § 2255 motions); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) (same); see also United States v. Price, No. 04-7058, 2005 WL 535361 (10th Cir. Mar. 8, 2005) (holding that Blakely does not apply retroactively); Bey v. United States, 399 F.3d 1266, 1269 (10th Cir. Mar. 1, 2005) (holding that Booker could not be raised in a second or successive § 2255 motion). Moreover, in the name of allegedly preserving the integrity of established sentences, the majority effectively "condemn[s]" perhaps as many as one out of every seven defendants in the plain-error "set" of cases, including possibly Gonzalez-Huerta, "to serve an illegal sentence," i.e., a sentence longer than that which would have been imposed by the district court under an advisory Guideline regime. Paladino, 2005 WL 435430 at *11.

I cannot agree with my colleagues who conclude that a remand for resentencing in this case "would not advance fairness or the integrity of judicial proceedings" but "would more likely injure the reputation of the courts than improve it." Hartz Concurrence, at 1. Specifically, the concern is voiced that remanding cases like Gonzalez-Huerta's for resentencing under an advisory

-30-

guideline regime "would serve only to permit the district court to deviate from th[e] guidelines in the exercise of an idiosyncratic personal view of fairness," and thus would result in less uniform sentences. Id. I submit these concerns run counter to the mandate set forth in Booker, i.e., to afford defendants, including those whose appeals were pending on direct review at the time of Booker's issuance, the opportunity of having the sentencing judge exercise his or her discretion under an advisory guideline regime, subject to appellate review for abuse of that discretion under a "reasonableness" standard. Does it advance the fairness, integrity, or public reputation of the courts if we ignore the Booker mandate and remove from the district court the very sentencing discretion the Supreme Court gave it? That a resulting sentence on remand may be less "uniform" and may deviate from the prior guideline sentence are not valid reasons for concluding the plain error we all agree occurred at sentencing should not be corrected. To the contrary, the fact that the sentencing judge may impose a different sentence on remand is an argument for, rather than against, sentencing remand.

Because all four prongs of the plain error test are satisfied in this case, I would remand to the district court for resentencing.

**LUCERO**, Circuit Judge, dissenting.

I join Part V of Judge Briscoe's dissenting opinion. It is my judgement that the Court's remand of <u>Fanfan</u> for further proceedings precludes the approach taken by my esteemed colleagues speaking in the majority. If the Court had concluded that the fourth prong of <u>Olano</u> could not be met, there would have remained no basis upon which to remand Fanfan's case for further proceedings allowing the government, and potentially the defendant, the benefit of <u>Booker</u>'s remedial holding. This very action by the Court saps any intellectual vigor from the majority's categorical decision to preclude exercise of our prudential obligations under <u>Booker</u>/<u>Fanfan</u>. I agree with the dissent that when there was no opportunity for the defendant or the government to develop a record relevant to post-<u>Booker</u> discretionary sentencing, that even in non-constitutional cases fundamental fairness is clearly implicated.

I also agree with much of the analysis of my other dissenting colleagues as to the third <u>Olano</u> factor as ably expressed by Judge Briscoe. Because defendants like Gonzalez-Huerta were sentenced under a system in which the parties and the court were laboring under a fundamental mistake of law, it is difficult, if not impossible, for us to assess what a district court would have done in the proper exercise of its discretion. That flawed legal framework effectively eliminated any incentive litigants might have had to present evidence and make objections that

would have been relevant to the exercise of a district court's discretion.  With regard to each of these considerations, I agree with Judge Briscoe's dissent.

Where I respectfully depart from the reasoning of both the majority and Judge Briscoe is with the premise that analyzing whether substantial rights have been affected by a sentence imposed in plain error turns on who has the burden to demonstrate "that the error must have affected the outcome of the district court proceedings." United States v. Cotton, 535 U.S. 625, 632 (2002).  Like Judge Briscoe, the Sixth Circuit responded to the burden shifting difficulty by presuming that defendants were prejudiced by Booker error.  United States v. Barnett, 398 F.3d 516, 526-527 (6th Cir. 2005) (presuming prejudice because "the inherent nature of the error made it exceptionally difficult for the defendant to demonstrate that the outcome of the lower court proceeding would have been different had the error not occurred").  By contrast, like the majority, the Eleventh Circuit leaves the burden on the defendant to prove prejudice, and concludes that a defendant must lose where it is unclear from the record whether he was prejudiced.  United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir. 2005) ("[I]f the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.").

I would follow neither extreme; rather, I would adopt the approach of the Second Circuit and the Seventh Circuit.  That approach was well described by

Judge Newman in the panel decision in United States v. Crosby, 397 F.3d 103 (2d

Cir. 2005):

> "Some might suppose that the only choice for an appellate court
> in a case presenting a procedural error in imposing a sentence is
> between disregarding the error and requiring a new sentencing.
> However, the choice is not so limited.  Section 3742(f) provides:
> 'If the court of appeals determines that – (1) the sentence was
> imposed in violation of law . . . , the court shall remand the case
> for further sentencing proceedings with such instructions as the
> court considers appropriate.' . . . [W]e conclude that the 'further
> sentencing proceedings' generally appropriate for pre-
> Booker/Fanfan sentences pending on direct review will be a
> remand to the district court, not for the purpose of a required
> resentencing, but only for the more limited purpose of permitting
> the sentencing judge to determine whether to resentence, now
> fully informed of the new sentencing regime, and if so, to
> resentence."

Id. at 117; see also  United States v. Paladino, ___ F.3d ___ (7th Cir. 2005) ("what

an appellate court should do in Booker cases in which it is difficult for us to

determine whether the error was prejudicial is, while retaining jurisdiction of the

appeal, order a limited remand to permit the sentencing judge to determine

whether he would (if required to resentence) reimpose his original sentence.").

Where the record at trial was developed under a system operating under a

mistake of law as to the exercise of a district court's discretion, and where

analysis of prejudice based on that error can be no more than an educated guess,

we can fulfill our obligation under "plain error review" only by availing ourselves

of the full information a limited remand to the district court would provide.  Not

only is a limited remand the most pragmatic approach, I would agree with the Second Circuit that it is within our appellate power: "since an appellate court has the authority to remand for resentencing, absent harmless error or unpreserved error that does not satisfy plain error analysis, we think an appellate court necessarily has the lesser power to remand for a determination of whether to resentence, and to permit resentencing." Crosby, 397 F.3d at 117.

What recommends the approach taken by the Second and Seventh Circuits is that it recognizes the likely impossibility of proving prejudice based on a record created in a pre-Booker sentencing proceeding, but does not purport to solve that injustice by imposing the same impossibility on the government. Rather, it leaves the burden on the defendant as is required by plain error review, but permits the defendant to construct a relevant record and allows the district court to weigh the evidence in the exercise of its discretion. Because the sentencing court is more appropriately the venue than is ours to conduct the fact-finding necessary to evaluate any new evidence offered by the parties, and is most capable of determining whether in light of this evidence and its new discretion it would have imposed a different sentence, remand is necessary.

A district court's determination that in the exercise of its discretion it would have imposed a non-trivially different sentence conclusively demonstrates that the original sentence affects a defendant's substantial rights, and thus satisfies the

third Olano factor. Moreover, for the reasons stated in Judge Briscoe's dissent, a sentencing judge's decision that he would have imposed a non-trivially different sentence establishes that the error plaguing the original sentence seriously affects the fairness, integrity, or public reputation of judicial proceedings. Conversely, any error in selecting the original sentence would not be prejudicial if the sentencing court determines on remand, after reviewing the parties' proffers of evidence and argument, that it would have imposed essentially the same sentence under an advisory Guidelines regime.

In opposition, the majority complains that the Second Circuit approach collapses the third and fourth Olano factors, contrary to Supreme Court precedent. (Slip op. at 16.) ("if these courts find the third prong satisfied, they conclude that the fourth prong is met as a matter of course"). In this claim, the majority is mistaken. What occurs "as a matter of course" under a limited remand is that if the district court determines that it would impose a different sentence, then there is no longer any doubt as to whether the fairness of the proceedings is seriously affected. I would hold to the principle that where a defendant is illegally sentenced and prejudice is established by a district court's conclusion that it would have imposed a non-trivially different sentence, then our discretion under the fourth prong is effectively at an end. The only reasonable conclusion that can follow from such a state of affairs is that the fundamental fairness and integrity of

-5-

the courts are clearly implicated. This conclusion does not "collapse" the third and fourth prongs.

Applying this approach to the facts of this case, I would hold that the record before us is insufficient to determine with confidence whether Gonzalez-Huerta was prejudiced by the district court's plainly erroneous application of the Sentencing Guidelines. Gonzalez-Huerta was sentenced at the very bottom of the Guidelines range. Although we can infer that the district court did not wish to impose a higher sentence, we cannot say whether the court would have imposed a lower sentence in the exercise of its discretion. Adding to that uncertainty is the fact that Gonzalez-Huerta declined to offer any mitigating evidence not captured by the presentence report. He apparently would have done so under the present discretionary regime, as he desired to argue that the presence of a "Fast Track" program in other jurisdictions allows defendants there "to receive substantially lower sentences than are available to defendants in jurisdictions without such a program." Aplt. Supp. Br. at 10. He informs us on appeal that, had his sentencing occurred under the post-Booker sentencing regime, he would have argued that the district court should impose a lower sentence to "reduce the disparity produced by 'Fast Track.'" Id. Gonzalez-Huerta received a sentence at the very bottom of the Guidelines range, the district court did not have any evidence before it other than that contained in the PSR, and Gonzalez-Huerta

presents an argument on appeal that he would have made to influence the district court's discretion. For these reasons, I would remand this case so that the district court may, on consideration of any additional evidence or arguments that the defendant or the government may proffer, determine whether to resentence in light of Booker.

The division on this court over the proper approach to Booker cases pending direct review is replicated among the various circuit courts. This wide ranging circuit split results in the disparate treatment of criminal defendants throughout the nation. Such uneven administration of justice cries out for a uniform declaration of policy by the Supreme Court.